UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| STACEY SMIEL, and<br>PETER SMIEL,<br><br>       *Plaintiffs*,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>       *Defendant*. | Civil Action No.: 3:25-cv-203<br><br>**COMPLAINT** |

Plaintiffs, Stacey Smiel ("Ms. Smiel") and Peter Smiel ("Mr. Smiel"), (collectively, "Plaintiffs"), by and through the undersigned attorneys, allege the following against Bank of America, N.A. ("BANA" or "Defendant"):

**PRELIMINARY STATEMENT**

1. Plaintiff Stacey Smiel is the daughter of Plaintiff Peter Smiel.

2. Plaintiffs are victims of unauthorized transactions by unknown perpetrator(s) on their joint checking account ending in x5376 (the "Account").

3. On or about August 6, 2024, Ms. Smiel received a call from a person claiming to be BANA's fraud department regarding suspected fraudulent activity in her account with Defendant.

4. Ms. Smiel was asked for personal information regarding the Account.

5. Ms. Smiel researched the phone number online before answering any questions, which showed it was a phone number related to Bank of America.

6. On or about August 7, 2024, Ms. Smiel received a notification from her Rocket Money app, a finance tracking app, regarding a large transaction detected on the Account.

6. Shortly thereafter, Ms. Smiel checked the Account and became aware of a fraudulent transfer from the Account (the "Unauthorized Transaction").

8. The amount transferred out of Plaintiffs' Account totaled $4,010.29 (the "Stolen Funds") plus a $120.31 international transaction fee.

9. Including the international transaction fees, the Stolen Funds totaled $4,130.6.

10. Plaintiffs promptly and repeatedly contacted Defendant regarding the disputed transaction(s) and provided supporting documentation, but to no avail.

11. To date, Defendant has failed to reimburse Plaintiffs for the Stolen Funds.

12. Plaintiffs bring claims against Defendant for violations of Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* (EFTA); Common Law Conversion; and Breach of Contract.

## JURISDICTION AND VENUE

13. The Court has jurisdiction pursuant to 15 U.S.C. § 1693m and 28 U.S.C. § 1331.

14. Supplemental jurisdiction exists for the state-law claims pursuant to 28 U.S.C. § 1367.

15. Jurisdiction over Plaintiffs' claim for declaratory relief is conferred by 28 U.S.C. § 2201.

16. Venue is proper in this District because Defendant's headquarters is located within this District, a substantial part of the events and occurrences underlying this litigation occurred within this District, and Defendant regularly conducts business here.

## PARTIES

17. Plaintiff Stacey Smiel is a natural person and citizen of Texas, residing in Dallas County, Texas.

18. Plaintiff Peter Smiel is a natural person and citizen of South Carolina, residing in Hilton Head Island, Beaufort County, SC, and is Stacy Smiel's father.

19. Each Plaintiff is a "consumer" as defined by each of the relevant statutes.

20. At all times relevant, Plaintiffs' accounts with Defendant were used for personal, family, and/or household purposes.

20. Defendant Bank of America, N.A., is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by each of the relevant statutes.

## FACTUAL ALLEGATIONS

22. On or about August 6, 2024, Ms. Smiel received a call from a person claiming to be a representative for BANA's fraud department regarding a suspected fraudulent activity in her Account.

23. The account was established and is used for personal, household, and family purposes, and not for commercial use

24. The unknown perpetrator informed Ms. Smiel there was a fraudulent charge on the Account, and that they would help her remove it.

25. Ms. Smiel researched the phone number online, which showed it was associated with one of Defendant's local branches.

26. Shortly after, Ms. Smiel was asked for personal information regarding the Account for security purposes.

27. The unknown perpetrator was able to access Plaintiffs' Account and disable the notifications on Defendant's app.

28. On or about August 7, 2024, Ms. Smiel received a notification from her Rocket Money app stating a large transaction was detected on the Account.

29. Shortly thereafter and on the same day, Ms. Smiel accessed the Account and realized there was an Unauthorized ACH Transaction for the amount of $4,010.29 plus a $120.31 international transaction fee.

30. Ms. Smiel promptly contacted Defendant's fraud department regarding the Stolen Funds and filed a dispute over the phone.

31. Ms. Smiel reset her BANA's app password with the assistance of Defendant's customer-service representative and a new debit card linked to the Account was requested.

32. On August 7, 2024, Defendant informed Ms. Smiel by e-mail that her password reset was successful.

33. During her call with Defendant's customer representative, a recurring payment was found on the Account and immediately canceled.

34. On August 7, 2024, Defendant informed Ms. Smiel by email that any future recurring payments to SP*MYHOSTINGE-GDT were stopped from Plaintiff's debit card ending in x9089 linked to the Account.

35. On August 7, 2024, Defendant provided Ms. Smiel by e-mail the requested information regarding ID theft.

36. On or about August 7, 2024, Ms. Smiel reported the identify theft with the Federal Trade Commission ("FTC").

37. Shortly after, Ms. Smiel received an e-mail confirmation that her FTC complaint #175909163 had been successfully filed.

38. On or about August 8, 2024, the Stolen Funds were posted in the Account.

39. Shortly after, Ms. Smiel requested that Equifax freeze her credit in an effort to avoid any further fraudulent activity.

40. On August 9, 2024, Defendant informed Ms. Smiel by e-mail that one or more disputed charges were added to her claim and a temporary credit had been issued for the amount of $4,010.29.

41. On August 9, 2024, Defendant informed Ms. Smiel by email that a new debit card ending in x3335 linked to the Account had been mailed to Plaintiffs on August 8, 2024.

42. On August 10, 2024, Defendant informed Ms. Smiel again by email that all the transactions she disputed had been posted to the Account.

43. On or about August 12, 2024, a service fee reversal was posted on Plaintiffs' Account.

44. On October 22, 2024, Defendant denied Plaintiffs' claim via letter, stating that the temporary credit applied to the Account would be removed on November 5, 2024.

45. Defendant's only stated reason for refusing to reimburse the unauthorized transaction was that "the charge was authorized by [the Plaintiffs] or made by someone who has permission to use the card or account."

46. On or about November 5, 2024, the temporary credit applied to the Account on August 9, 2024, was reversed.

47. To date, Defendant has failed to reimburse Plaintiffs for the Stolen Funds.

## CAUSES OF ACTION

### COUNT 1: Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.*

48. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

49. Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

50. Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-

(1) $50; or

(2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

51. Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

52. This cap is increased to $500 where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. § 1693g(a)(2).

53. The rules are further provided in Regulation E, 12 C.F.R. § 1005.6(b):

(b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:

(1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.

(2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:

(i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and

(ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

54. Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations. See Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.")

55. Under the EFTA, consumers who are tricked into providing account access by a scammer posing as a bank employee are not liable for the transactions initiated by the scammer, which are unauthorized electronic fund transfers under § 1693a(12). See, e.g., Official Interpretation of Regulation E, 12 C.F.R. § 1005.2(m)(3) ("Access device obtained through robbery or fraud. An unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through fraud or robbery.").

56. Thus, Defendant's failure to reimburse Plaintiffs is patently unlawful and in violation of Section § 1693g.

57. The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized. *See* 15 U.S.C. § 1693g(b).

58. Defendant cannot meet its burden of proof here, where Plaintiffs:

a) Promptly disputed the transactions;

b) Provided details regarding the theft of theirs card;

c) Has no criminal history;

d) Has no history of filing false disputes; and

e) The thefts are inconsistent with Plaintiffs' pattern of use.

59. Defendant also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiffs' claim. 15 U.S.C. § 1693f(d). *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

60. As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

61. Defendant did not have a reasonable basis for believing the transfer was authorized, based on the evidence Plaintiffs provided to Defendant.

62. Specifically, Defendant's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiffs' account was not in error, and also constitutes a knowing and willful conclusion that Plaintiffs' account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiffs to treble damages in addition to all other relief sought herein.

63. As a direct and proximate result of Defendant's violations of the EFTA, Plaintiffs are entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

## COUNT 2: Breach Of Contract

64. Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

65. Defendant had a duty under its "Account User Agreement" with Plaintiff Ms. Smiel to use commercially reasonable efforts to protect the Account from unauthorized access.

66. Specifically, Defendant's contract with Plaintiff Ms. Smiel included the following clause:

> "You will have no liability for unauthorized transactions if you notify us within 60 days after the statement showing the transaction has been sent to you (or 90 days if the transaction was from an account maintained at another financial institution). If you do not, you may not get back any of the money you lost from any unauthorized transaction that occurs after the close of the 60-day period (or 90-day period if the transaction was from an account maintained at another financial institution). If we can show that we could have stopped the transaction if you had notified us in time. If qualifying extenuating circumstances (such as a long trip or hospital stay) kept you from telling us, we may extend the time periods.
>
> …
>
> A transaction is unauthorized for purposes of this Section, if it is initiated from your account by someone other than you, who does not have actual authority to initiate that transaction and from which you receive no benefit. Transactions resulting from the following situations are considered "unauthorized" for purposes of this Section:
>
> • Your account has been accessed without your permission;
> • Your debit card, username, or password has been lost, stolen, compromised, or used without your permission;
> • Someone has transferred money from your account without your permission; or
> • Your statement shows transfers out of your account that you did not make or permit.
>
> NOTIFY BANK OF AMERICA AT ONCE if you believe any of these have happened to your account."

67. Plaintiff Ms. Smiel notified Defendant on the same day the unauthorized transaction occurred, well within the 60-day period stated in Defendant's contract.

68. The unauthorized transactions that occurred on August 7, 2024, meet Defendant's definition of unauthorized transactions outlined in their Account User Agreement

69. Defendant assumed a duty under the contract to make Plaintiffs whole for any unauthorized access but failed to do so.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs seek(s) judgment in theirs favor and damages against Defendant:

A. awarding Plaintiffs actual damages, treble damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees; and

B. such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand(s) a trial by jury of all issues triable by jury.

Dated: March 21, 2025

*/s/Karl S. Gwaltney*
Karl S. Gwaltney
Maginnis Howard
7706 Six Forks Road
Suite 101
Raleigh, NC 27615
T: (919) 526-0450
E: kgwaltney@carolinalaw.com

*/s/Paul Tadross*
Paul Tadross
Schlanger Law Group, LLP
*Pro Hac Vice Application forthcoming*
60 East 42nd Street
46th Floor
New York, NY 10165
T: 212-500-6114
F: 646-612-7996
E: ptadross@consumerprotection.net

*Attorneys for Plaintiffs*